## HOGINS v. BOGGS.

### No. 18,155; November 7, 1893.

34 Pac. 653.

**Deed—Description—Distances.—Under a Deed Purporting** to convey a certain number of feet along a street commencing at a certain point, only that number of feet passed by the deed, and therefore evidence that the grantor, in measuring off the land granted, measured more than that number of feet, is incompetent to show that more than the number of feet stated passed by the deed.[1]

APPEAL from Superior Court, Placer County; W. H. Grant, Judge.

Action by Catherine Hogins against J. C. Boggs. Judgment for plaintiff. Defendant appeals. Reversed.

Hale & Craig, John M. Fulweiler and Ben P. Tagor for appellant; Wallace & Wallace for respondent.

TEMPLE, C.—Action to quiet title to land in Newcastle, in the county of Placer. The controversy is in regard to the boundaries. The plaintiff had judgment, and the defendant appeals from the judgment and an order refusing a new trial.

The parties own and occupy contiguous places on Depot street, and both derive title from H. F. Albee. It is agreed that A. N. Page formerly owned a larger tract of land, of which the premises now claimed by both parties constituted a portion. September 9, 1875, Page conveyed to Mrs. H. F. Albee a tract fronting on Depot street one hundred feet and extending one hundred and fifty feet back. The lots of the parties and the strip in dispute extend two hundred feet back from Depot street. The tract conveyed to Mrs. Albee extends along Depot street one hundred feet northerly from the Good Templars' lot. The strip in dispute is six feet wide, and the southerly line of it is just fifty feet nine inches north from the Good Templars' lot. The deed to Mrs. Albee was a bargain and sale deed, and Mrs. Albee testified that she paid $50

---

1 Cited and approved in Holden v. Alexander, 82 S. C. 452, 62 S. E. 1112, as holding that parol evidence is not admissible to vary the description of a boundary in a deed.

for the land. There was no evidence tending to show that the money paid was her separate property. The land then was the community property of Albee and wife. November 19, 1877, Page conveyed to H. F. Albee a tract on the north of the lot conveyed to Mrs. Albee, fronting twenty feet on Depot street. This vested in Albee, or in Albee and wife, as community property, a frontage of one hundred and twenty feet on Depot street. Another conveyance was made by Page to Albee and Hogins of a tract including the land theretofore conveyed to the Albees and other lands. This conveyance was intended, as Albee testified, to take in odds and ends. The land described in this deed was conveyed to Albee by Hogins. November 17, 1880, Albee conveyed to Hogins a tract of land described as follows: "Commencing at the northwest corner of the Good Templars' Hall Association lot on Depot street, and running along said Depot street, about northwest, about fifty feet; thence nearly westerly about one hundred and fifty feet, more or less, to Page's line; thence fifty feet in a southerly direction; and thence one hundred and fifty feet, more or less, to the place of beginning." February 23, 1883, Albee conveyed to defendant Boggs a tract of land described as follows: "Commencing on Depot street in said town of Newcastle, at the northeast corner of A. N. Page's lot; thence westerly, along the south line of said Page's lot, a distance of 90 feet; thence south, 20 feet; thence west, 60 feet, more or less; thence south, 50 feet; thence east, a distance of 150 feet, more or less, to said Depot street; thence north along said Depot street, 70 feet, to the place of beginning,—together with the dwelling house thereon, heretofore known as the residence of the party of the first part." In none of the deeds from Page, under which Albee claimed, were any landmarks called for except Abbot's lot, Madden's lot, and Depot street. North of Madden's lot, no landmark was called for except Depot street. The distances are therefore controlling. There was nothing to do, then, but to find the starting point, and measure northerly along the line of Depot street. There was no chance, under such circumstances, for surplus land. It does not appear that any landmarks were set after the deeds were made which were agreed upon by the parties. The land was not immediately inclosed. In 1878 a fence was built in front of the property, and according to that, as 1 understand the tes-

timony, there was a surplus of seven and three-fourths inches only. Still, a witness, Elmer Albee, was allowed to testify, against the objection of defendant, that he assisted Mr. Page in measuring the one hundred feet conveyed to Mrs. Albee, and that, "as nigh" as he could guess, it was five or six feet over. The only purpose of this testimony was to show that more than one hundred feet passed by the deed to Mrs. Albee. It was clearly incompetent for that purpose. If they measured six feet over the one hundred feet, that did not pass title to anything more than was described in the deed. Mrs. Hogins claims as heir to Daniel Hogins, and under a deed from Albee dated June 23, 1890. Apparently, at that time, Albee had no land to convey, and it is likely the conclusion of the court was based upon the testimony of Elmer Albee as to the surplus six feet. Oral evidence would have been competent to apply the description to the land. For this purpose it might have been shown where H. H. Smith's lot was, that it was the same property afterward known as the "Madden" or "Good Templars'" lot, and where Depot street was. These facts appearing, there were no others which could have thrown light upon the matter. I think the judgment and order should be reversed and a new trial had.

We concur: Vanclief, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are reversed and a new trial ordered.